VAN WYCK *vs.* ALLIGER.

Under a contract for the sale and purchase of land, by which time is given for the payment of the purchase money, and the purchaser is to have the possession of the premises in the meantime, the purchaser is, in equity, deemed the owner of the premises, having the same rights as a mortgagor in possession; and the vendor stands in the situation of an equitable mortgagee.

And the court will not restrain the purchaser, by injunction, from committing waste, by cutting timber upon the land; unless he does so to such an extent as to render the land an inadequate security for the unpaid purchase money.

The court will not grant an injunction to prevent the cutting of timber, by the purchaser, where it was stipulated in the contract of sale, that he should have the privilege of converting the timber upon the premises into lumber, for the payment of the purchase money, and there is no allegation in the bill, nor proof, that the land would not be an adequate security for the payment of the purchase money, without the timber.

As a general rule, a court of equity will only interfere by injunction to prevent future waste. It will not grant an injunction against the removal of timber already cut.

IN EQUITY. This was a bill filed by the plaintiff to restrain the defendant, by injunction, from the commission of waste. The plaintiff was the vendor and the defendant the vendee of premises, in the possession of the latter under a con-

tract of sale. The other facts in the case sufficiently appear in the opinion of the court. The cause was brought to a hearing upon pleadings and proofs.

*J. Thompson*, for the plaintiff.

*I. Hardenburgh*, for the defendant.

*By the Court*, MASON, J. The common law doctrine of the courts, in regard to waste, was most elaborately and learnedly discussed by Lord Chief Justice Eyre, in the case of *Jefferson* v. *The Bishop of Durham and others*, (1 *Bos. & Pull.* 120.) At common law, said he, the proceeding in waste was by writ of prohibition from the court of chancery, which was considered as the foundation of a suit between the parties. If that writ was obeyed, the ends of justice were answered. But if that was not obeyed, and an alias and pluries produced no effect, then came the original writ of attachment, returnable in a common law court, which was considered the original writ of the court. The form of that writ shows the nature of it. It was the same original writ of attachment which was and is the foundation of all proceedings in prohibition. That writ being returnable in a common law court, on the defendant's appearing, the plaintiff counted against him, and he pleaded, and the question was tried, and if the defendant was found guilty, the plaintiff recovered single damages for the waste committed. This remedy, at common law, was somewhat extended by the statutes of Marlbridge and Gloucester; the latter of which gave a writ of waste or estrepement *pendente lite*. Then came the statute of Westminster the second, which took away the writ of prohibition entirely and gave the summons in its stead. This was the common remedy, with the writ of prohibition abolished, and the summons in its place with the judicial writ of estrepement given *pendente lite*. There was, however, in real actions by the common law, another remedy of a preventive nature in the writ of estrepement, which followed the judgment in the real action. The writ went to the sheriff after the judg-

ment and before possession was delivered by the sheriff, to prevent the commission of waste on the lands recovered ; and subsequently, when the proceeding by ejectment became the usual mode of trying the title to land, as the writ of estrepement did not apply, courts of equity, for the purpose of preserving the property *pendente lite,* supplied the defect by allowing the writ of injunction to issue. The courts of equity, however, have not stopped here. They have often interfered in restraining waste by persons having limited interests in property, on the mere ground of the poverty of the common law in affording an immediate remedy for the preservation of the property from irreparable injury or destruction. And the courts of equity have extended this salutary relief to remedies in many cases where the common law remedies could not be made to apply. Such is the relief granted on a bill *quia timet,* which is allowed even when no waste has been committed, but is only meditated or feared. The bill in equity *quia timet* is in the nature of a writ of prevention, to accomplish the ends of precautionary justice. The remedy of this bill is ordinarily applied to the prevention of anticipated wrongs or mischiefs, and not merely to redress them when done. (2 *Story's Eq. Jur.* § 826.) It is said by the learned Justice Story in his Equity Jurisprudence, (2 *Vol. p.* 170, § 826,) speaking of the bill *quia timet ; "* The party seeks the aid of a court of equity because he fears (*quia timet*) some future probable injury to his rights or interests; and not because an injury has already occurred which requires any compensation or other relief." This bill is the appropriate remedy to restrain the commission of waste, by injunction, and lies in all cases where a party shows a case which entitles him to this equitable relief. It becomes important, in determining the rights of the parties in this case, to inquire in the first instance in what relation precisely we are to regard these parties as standing to the land in question. It appears, both from the pleadings and the evidence in the case, that on the 29th day of March, 1843, the plaintiff, by his agent Donaldson, entered into a written contract for the sale of the premises to the defendant. The defendant agreed to pay the plaintiff for the premises,

Van Wyck *v.* Alliger.

$3000, to be paid in lumber; interest to be paid only on $2500 of it; three hundred dollars to be paid the first year with interest; the balance to be paid in six equal annual payments with interest; the lumber to be delivered from the spring of the year to the last run of boats in the fall, at Poughkeepsie or New Hamburgh. The defendant went into the possession of the premises under this contract, as the agent Donaldson swears, about the first of May, 1843. He says that, "it was understood between the defendant and myself, acting as agent for the plaintiff, that the defendant should have possession of the premises under this article." I am satisfied from the nature of this agreement between these parties, the situation of the property itself, and the defendant's situation, and from the testimony in the case, that it was understood that the defendant should have the privilege of paying for this place, by converting the timber upon the premises into lumber, and delivering it to the plaintiff, at the places named in the contract, in payments upon the contract. There is over two hundred acres of the land, about one hundred acres of which is covered by water. There was a saw-mill in operation upon the premises, at the time of the sale, and the defendant went on for four or five years, cutting the timber upon the lot, with the full knowledge of the plaintiff, and converting the same into lumber, and making payments to the plaintiff in the meantime, upon his contract, to the amount of about $1600; and so far as appears from the evidence in the case, there was not one word of complaint from the plaintiff as to his right to do so.

The plaintiff claims that the defendant had forfeited the contract, by not keeping up the payments, and that an end had been put to this contract by the parties. I have looked carefully into the evidence in the case, and it fails entirely to show any such thing. It is undoubtedly true, from the evidence, that the defendant failed to make his payments, and the plaintiff therefore had a right to elect to consider the contract forfeited, and bring ejectment and put the defendant out of possession. And unless he did elect to consider the contract forfeited, the defendant was fully justified in holding under it; and it remains to,

all intents and purposes, a valid contract, until the plaintiff has disaffirmed it.   It is true, the plaintiff's son swears that in January, 1848, he went with his father to see the defendant, and that the defendant told the plaintiff he could not pay him any thing ; that he was poor, and not able to pay him any thing, and then stated to the plaintiff that he must take the place back ; and that to this the plaintiff made no reply.

There is nothing in the evidence which shows that the parties have ever put an end to this contract.   It is not important for us to inquire what are the legal rights of these parties under this state of things.   The plaintiff has come into a court of equity and submitted his case to the equitable jurisdiction of the court, and he must be satisfied with the determination of his case upon the principles which courts of equity have applied to similar cases.

Under the rule which obtains in courts of equity the defendant, by the contract of sale, is deemed the equitable owner of the premises, and the plaintiff stands in the situation of an equitable mortgagee. (6 *Ves.* 349, *note a.*   15 *Id.* 138.   2 *Story's Eq. Jur. p.* 628, §§ 789, 790, 1212.   6 *John. Ch. Rep.* 403. 3 *Id.* 316.   1 *Barb. Sup. Court Rep.* 495.   *Edgerton* v. *Peckham,* 11 *Paige,* 359.)   Now it is a familiar rule in equity, that a mortgagor in possession has the right to cut timber ; and a court of equity will not interfere to restrain him in the exercise of that right, until it is made to appear to the court that he is cutting to an extent calculated to render the land an incompetent security for the amount due upon the mortgage.   (2 *Story's Eq. Juris.* § 915.   *Brady* v. *Waldrons,* 2 *John. Ch. Rep.* 148.   8 *Ves.* 105, *note* 1.   *Hoppesley* v. *Spencer,* 5 *Madd.* 422. *Farrant* v. *Lovell,* 3 *Atk.* 723.   *Wright* v. *Atkins,* 1 *Ves. & Bea.* 314.   *Scott* v. *Wharton,* 2 *Hen. & Munf.* 25.)   I know there are some cases which hold that the whole estate is security for the mortgage debt, and that the courts should therefore interfere by injunction to restrain all waste, without reference to the question whether the acts were calculated to impair the security or not.   I am not prepared to recognize the doctrine con-

tained in these cases, and the doctrine has been repudiated in most of the cases cited above.

In *Cox* v. *Goodfellow*, which was the case of a bill against the assignees under a commission of bankruptcy against the mortgagor, for a foreclosure and an injunction against cutting timber, the vice chancellor refused the injunction, stating that the rule had been settled by the lord chancellor and himself that an injunction should not be granted in such a case, unless the mortgagee showed that the security would be so reduced by the waste as to render it an inadequate security. (8 *Vesey*, 105, *Sumner's* ed. *note* 1.) The same doctrine was affirmed in the case of *Hoppesley* v. *Spencer*, (5 *Madd.* 422.) The same principle is laid down in the broadest terms in *Scott* v. *Wharton*, (2 *Hen. & Munf.* 25,) in which case it is expressly adjudged that an injunction to stay waste ought not to be granted to a vendor against a vendee to whom he has sold a tract of land in fee simple, retaining the title as a security for the purchase money; unless he brings his suit to subject the land to the payment of the purchase money and charges the defendant with cutting and selling timber in a manner calculated to render the land an incompetent security; in which case an injunction to stay waste may be awarded.

The same doctrine was again affirmed on a bill filed by the mortgagee against the mortgagor, to restrain waste, in the case of *King* v. *Smith* (2 *Hare's R.* 239.) This case is cited by the learned Justice Story in his Commentaries on Equity Jurisprudence, 2 vol. page 246, § 915. Story lays down the rule in these words: "If the mortgagor in possession should fell timber on the estate and thereby the security would become insufficient, (but not otherwise) a court of equity will restrain the mortgagor by injunction." (2 *Story's Eq. Juris.* § 915.) This, it seems to me, is the reasonable rule, and as far as a court of equity should go in such cases. The doctrine that the whole estate is pledged by the mortgage, as security for the mortgage debt, is all true. The mortgagee's interest, however, is but a chattel interest, even after forfeiture. (2 *Barb. Ch. Rep.* 134, 5.) The land, in equity, belongs to the mortgagor; and it seems to

me that courts of equity will do their whole duty when they fully protect this chattel interest of the mortgagee by saying to the mortgagor, " you shall do nothing calculated to impair the security ; with this exception you may commit all the waste upon the land you please, for it is your own." I can never assent to the issuing of an injunction in behalf of a mortgagee, in such a case, unless he shows that it is necessary to preserve his security. If this doctrine—that the land is a security for the mortgage debt, and as the whole estate is a security, the court should enjoin any cutting of timber or other waste, without reference to the sufficiency or insufficiency of the security—is to prevail, great wrongs could be perpetrated under the rule. Suppose A. has a mortgage of $300 upon timbered land belonging to B. worth as many thousand dollars, and B. goes on to cut timber and clears the land, without any design or even probability of impairing A.'s security, still he shall be enjoined if the doctrine of some of these cases is to be sustained. I am not prepared to sanction such a doctrine. The same rule in equity, as we have already seen, prevails in this case as would govern on a bill filed by a mortgagee against a mortgagor in possession. In equity the purchaser is owner of the land, but the land is a security for the payment of the purchase money, and one which it is the duty of courts to protect. That they will faithfully do by enjoining all waste calculated to impair its value ; and it seems to me that they will subserve the purposes of equity much better if they stop there. In the case under consideration, there is not a single allegation in the bill charging that the land is not an adequate security, with all the timber off, for the purchase money remaining due upon the contract of purchase ; and the proof fails to show such a case.

But again ; this is a bill *quia timet ;* a bill by which the party obtains the injunction because he fears some present or future injury to his rights or property, and not because an injury has been done. Now there is not a single pretended act of waste shown by the evidence in this case to have been committed within a year of the time of the filing of this bill ; and there are no threats or probable grounds shown in the evidence

to induce the belief that the defendant will commit waste hereafter. Some of the witnesses say that there is not $50 worth of timber upon the whole two hundred acres, and as to the four hundred logs which were cut in the spring of 1847, more than a year before the filing of the bill in this case, they lie there still, upon the premises. The plaintiff has prayed in his bill that the defendant be restrained from interfering with, or in any way removing, these same logs. This part of the relief we can not grant. This court will not grant an injunction barely to prevent the removal of timber which has been unlawfully cut. (*Watson* v. *Hunter and others*, 5 *John. Ch. Rep.* 169, *and cases there cited.* 3 *Paige*, 259.) As a general rule a court of equity will only interfere by injunction to stay future waste. The remedy of accounting for waste already committed is merely incidental to the jurisdiction to prevent future waste, assumed to prevent multiplicity of suits and to save the party the necessity of resorting to trover at law. (2 *John. Ch. Rep.* 170.) There is a very good reason why a court of equity should not sustain a bill solely to enjoin the removal of timber already cut. The timber, when cut into logs, ceases to be a part of the realty, is converted into personal property, and trover will lie for it. The plaintiff has a perfect remedy in an action at law to recover the value of these logs, if the defendant had no right to cut them ; and if he had, then the defendant ought not to be enjoined.

But again ; if we were of the opinion that this bill ought to be sustained to prevent future waste, I do not see how we could give an account of, and satisfaction for, waste already committed, as there is no prayer in the bill for an account of the waste already committed. I have looked very carefully into the books, and have not been able to find a single case in which an accounting for waste committed has ever been decreed unless the relief was sought by the prayer of the bill. (*See Eden on Inj.* 244 *to* 249.)

At the time of the filing of the bill in this case an injunction was issued, and upon the coming in of the answer, the court dissolved the injunction, and the plaintiff asks the court to re-

vive the injunction and make it perpetual. This, it seems to me, it should not do, upon the case made by the pleadings and the proofs, for the reasons above stated. The plaintiff has failed to make out a case entitling him to the equitable relief sought by his bill, and has compelled the defendant to litigate the case with him, and I think the bill should be dismissed with costs to the defendant. The decree will therefore be, that the plaintiff's bill be dismissed with costs, but without prejudice to the plaintiff's rights in any action at law.

Decree accordingly.

---

CLINTON GENERAL TERM, July, 1849.     *Paige, Willard, and Hand,* Justices.