## SUPREME COURT.

### Theodore D. Hadley, appellant, agt. Joseph Barton, respondent.

*Agreement to raise crops on shares — title of owner of the land to tenant's share — as per agreement for advances made — sale and possession of premises to a third person.*

Plaintiff, being the owner of a farm, in March or April, 1870, entered into an agreement with one C. to cultivate a certain portion of it on shares, plaintiff to retain the absolute title and possession of C.'s share of the crops raised, as security for certain advances made by the plaintiff.

On the 10th of June, 1870, after the crops had been sown and planted by C. — the plaintiff, in the meantime, having advanced to C. money to pay for seed, &c., in the whole to the sum of $280 — the plaintiff sold the farm, by an executory contract, to one G., and delivered to G. the immediate possession, without any reservation or notice of C.'s interest therein.

C., having gone on, subsequent to the sale, and harvested and gathered the crops, sold his share (amounting to about $280) to the defendant. The plaintiff claimed that C. had no title to convey; that never having paid back to plaintiff the advances made to C., the title and possession of C.'s share was in the plaintiff, and therefore brought this action for conversion.

*Held*, that by the contract with G., the purchaser, without reservation, the plaintiff transferred to G. the immediate right of possession, and all the right to the crops then growing or thereafter to be planted and grown and harvested; and thereby disengaged himself from performing any agreement with C. for cropping on their joint account, and necessarily abandoned that agreement, and was estopped from setting up any claim to the crops thereafter to be cultivated and harvested on the farm as against his vendee, G. The plaintiff had clothed G. with the apparent and also with the real title. The action could not be sustained.

E. Darwin Smith, J., *dissenting*. Holding, that the agreement which the plaintiff proved, and which the referee found to have been made between the parties in respect to working in common of the farm, did not involve

or create any relative rights of tenants in common in respect to the crops.

Parties can make an agreement for the cultivation, by one of them, of the land of another which does not, in legal effect, make them tenants in common, as between themselves in respect to the crops, and such an agreement the plaintiff made in this case with C.

By this agreement it was understood by both parties that the crops should belong to the plaintiff till his advances made to C. should be paid, and such advances were made on the faith and security of such agreement. This was at that time .the only way in which the plaintiff could secure himself for the advances made, and to be made, as there was nothing then upon which a chattel mortgage could operate, the crops not being in existence. The plaintiff testified that "the defendant stipulated that I should have my pay out of the crops, and they should remain in my possession and be mine until my advances were paid."

The plaintiff, therefore, had the title to the crops, and the whole title thereto as between him and C., and they were not tenants in common in such crops. The referee erred in dismissing plaintiff's complaint. Judgment affirmed.

*General Term, Fourth Department, January,* 1874.

MULLIN, *P. J.*, TALCOTT *and* E. DARWIN SMITH, *JJ.*

.IN the forepart of 1870 the plaintiff was the owner of a farm, and on the ·fourteenth of April in that year signed a note for one .Command to secure the purchase-price of a horse, under the verbal arrangement that the plaintiff should have the right to and the possession and ownership of Command's share of the crops which he might raise that season on plaintiff's farm until this and other advances should be paid. Under the same arrangement the plaintiff furnished seed and feed for teams to said Command until all of the advances amounted to the sum of $280.98. After making said agreement, and after said Command had put in all the corn, barley, &c., and had set out one-third of the tobacco, the plaintiff agreed to sell his farm to one George by an executory contract which provided that possession should be given to the purchaser immediately, and that upon the payment of the purchase-money at a later day the premises should be

Hadley agt. Barton.

conveyed to him. No part of the plaintiff's advances were ever paid. In the fall, after the tobacco was packed and ready for shipment, it was taken by Command, unbeknown to the plaintiff and sold to the defendant who paid for it as follows, one-half to said Command and one-half to said George. Shortly after the receipt of this money Command absconded.

The plaintiff upon learning that the tobacco had been sold to the defendant, demanded one-half thereof of him, and upon his refusal to deliver it or to pay for it, brought this action against him for the conversion of said tobacco.

The case was tried before a referee who reported in favor of the defendant and ordered the complaint dismissed, upon the ground, " that by the arrangement between the plaintiff and said Command the plaintiff did not acquire title to the tobacco in question in this action."

From the judgment entered upon such report this appeal was brought.

*Fuller & Vann*, for appellant.

*Gray & Costello and L. E. Warren*, for respondent.

TALCOTT, *J.*—The plaintiff claims to have made a contract with John Command, in March or April, 1870, by which Command was to cultivate a certain portion of a farm, then belonging to the plaintiff, during the ensuing season, on shares, but that the plaintiff was to retain the absolute title to Command's share of the crops raised as security for certain advances. In the meantime Command had planted a small part of the tobacco in question in this suit. On the 10th day of June, 1870, the plaintiff entered into a contract with J. M. George for the sale of the farm and all the tools and utensils thereon, with the immediate possession, payment of the purchase-price to be made by installments after the first payment, and on full payment, plaintiff was to give George a full covenant deed.

It does not appear that Command had any visible possession of any part of the farm at the time of this contract between plaintiff and George, or that George had any notice of any agreement between the plaintiff and John Command.

The recognized rule in this state, in relation to land held under what are termed articles, *i. e.*, executory contracts, purchase-money to be paid at a future day, with the right of immediate possession in the vendee, the legal title to be conveyed on payment of the purchase-money; that the vendee has the rights of a mortgagor in possession.

The vendor is a mortgagee holding the legal title as security for the purchase-money ( *Van Wyck* agt. *Alliger*, 6 *Barb.*, 507, *and cases cited*).

The transfer of the possession is a transfer of all the incidents of a rightful possession, the rents, issues and profits, and especially the emblements or annual crops.

By the contract with George, without reservation, the plaintiff undertook to and did transfer to the latter the immediate right of possession, and all right to the crops then growing or thereafter to be planted and grown and harvested.

By the transfer, the plaintiff disenabled himself from performing any agreement with John Command for cropping on their joint account, and necessarily abandoned that agreement, and was most clearly estopped from setting up any claim to the crops thereafter to be cultivated and harvested on the farm as against his vendee, George.

John and Patrick Command, after the sale to George, went on and planted, cultivated and harvested the tobacco in question. Though there is no evidence of a specific agreement between George and the Commands, yet it is clear that the Commands must have made this crop under some arrangement or license with or from George. John Command states that the tobacco was raised on George's farm, and that one-half belonged to George, and one-half to himself and his brother Patrick.

The defendant is a *bona fide* purchaser for value, without

any notice of any claim on the part of the plaintiff. He bought of the three, George and the two Commands, jointly, taking one bill of sale from the three. The plaintiff had clothed George with the apparent, and, as we think, with the real title.

The defendant may set up and rely upon the title of any one of his joint vendors. He claims, under George, title to a crop raised on George's farm, without notice of any claim by plaintiff; and the plaintiff is estopped by his contract of sale, with possession, to allege that he retained any interest in the crops.

None of the exceptions as to the admission of evidence were well taken.

The judgment should be affirmed. ·

E. DARWIN SMITH, *J.*, *dissenting.* — If the agreement between the plaintiff and Command was simply in ordinary phrase, that the latter should work the plaintiff's farm on shares, and they should divide the crops, or the proceeds of the same, this would, doubtless, have constituted them tenants in common in such crops (*Chawnen* agt. *Lusk*, 2 *Lansing*, 212; *Armstrong* agt. *Bicknell*, *idem*, 219 ; *Tobie* agt. *Shattuck*, 22 *Barb.*, 568; *Tanner* agt. *Hill*, 44 *Barb.*, 428 ; *Pulman* agt. *Wise*, 1 *Hill*, 234).

But the agreement which the plaintiff proved, and which the referee found to have been made between the parties, in respect to working in common of said farm, does not, I think, involve any such consequences, or create any such relative rights. Parties can make an agreement for the cultivation, by one of them, of the land of another, which does not, in legal effect, make them tenants in common, as between themselves, in respect to the crops, and such an agreement, I think, the plaintiff made in this case with said Command.

These parties, as the referee finds, had some agreement some time in March, 1870, that said Command should work a part of plaintiff's farm on shares.

Hadley agt. Barton.

The terms of this agreement do not distinctly appear in the report of the referee, or in the evidence. But the referee does find that on the 14th day of April, 1870, the plaintiff signed a note with said Command to secure the purchase-price of a horse, to wit, $170, and which was paid by said plaintiff under the verbal agreement aforesaid, and which, in his testimony, the plaintiff states as follows: " I was to have the right to and possession of all his (Command's) crops until this and other advances were paid. I furnished seed and feed for the team during the spring and autumn, until I sold the farm, and Command agreed I should have my pay out of the crops, and they should be in my possession until all my advances were paid, and he should take none off without my knowledge and consent."

This agreement was made on the fourteenth day of April, a few days after the arrangement spoken of in March and before the spring work on the farm commenced, as I understand the facts, and was at least a modification of the original contract, or a more specific and full agreement, and must be deemed, I think, to be a substitute for and stand in the place of any other agreement or understanding previously had between the parties. No rights then existed except such as rested on mere verbal understanding or contract, more or less explicit, that Command should work the farm upon shares.

This agreement should be considered, I think, as the final and definite arrangement between the parties in respect to the terms upon which such farm should be worked.

By this arrangement I think it was understood by both parties, and was the contract, in fact, that the crops should belong to the plaintiff till his advances made to the said Command should be paid, and such advances were made on the faith and security of such agreement. There were then no crops in existence. There was nothing upon which a chattel mortgage could operate. An agreement to give a lien on the crops thereafter to grow on said farm, as between the parties, would, doubtless, be valid in equity, and take effect when the

crops came into actual existence (*Seymour* agt. *Canandaigua Falls R. R. Co.*, 25 *Barb.*, 305).

The only way in which the plaintiff could effectually secure himself for the advances made and to be made upon such crops not then sown or planted, as they were sowed or planted on his own land, was to reserve and retain the title to such crops till such advances were paid. This the parties must have understood, and their agreement should be construed so as to carry out their actual intent in this particular.

This intent is more clearly expressed in the testimony of the plaintiff, in giving the terms of the contract. Plaintiff testified as follows: " he, defendant, stipulated that I should have my pay out of the crops, and they should remain in my possession and be mine until my advances were paid."

The referee finds this contract, but overlooked in stating it, the fact above stated, that " the crops should remain in my possession and be mine."

There is no reason in the evidence that I can see why these terms of the contract stated by the plaintiff were or should be omitted in the finding of the referee, and I presume it is a mere mistake or casual omission in the statement of the contract in his report.

In accordance with these views the plaintiff had the title to the crops, and the whole title thereto, as between him and the said cropper, Command, and they were not tenants in common in such crops; said Command had to do the work of pulling and harvesting said crops, and had the rights of a cropper to one-half of such crops, as between him and said George, and was to receive from the proceeds thereof, as between him and the plaintiff, one-half of the amount that should remain in the plaintiff's hands after his advances were paid. The parties clearly acted upon this assumption, for it appears that after the agreement aforesaid was made on the eighteenth of April, the plaintiff furnished seed and feed for the team during the spring and summer, and made other advances

to said Command, in the aggregate, as the referee finds, amounting to the sum of $270.

If these views are correct the referee erred in dismissing the plaintiff's complaint. The said Command had no title to the tobacco, and of course could give none to the defendant.

Assuming that the defendant was the *bona fide* purchaser of said tobacco from said Command, he could acquire no higher title thereto than Command himself possessed, (*Ballard* agt. *Burgett*, 40 *N. Y.*, 314; *Heming* agt. *Hoppock*, 15 *N. Y.*, 409; *Austen* agt. *Dye*, 46 *N. Y.*, 500).

The plaintiff, I think, was entitled to recover for one-half of the tobacco purchased by the defendant of Command, stipulated at the trial to amount to $280.95, with interest from January 31, 1871.

The judgment should, therefore, be reversed, and a new trial granted, with costs to abide event.

Judgment affirmed.