## MOOERS *vs.* WAIT and GRIFFIN.

*A person entering into the possession of wild, uncultivated land, under a contract of sale giving him a right of entry and occupancy, and reserving to the landlord the land as security until the payment of the consideration money by witholding the deed, has a righ to enter and enjoy the the land for agricultural purposes.*

THIS was an action of *trover*, tried at the Clinton circuit in January, 1828, before the Hon. REUBEN HYDE WALWORTH, then one of the circuit judges.

On the trial of the cause it appeared, that the plaintiff was the owner of a certain lot of land; that on the 18th day of October, 1825, he entered into an agreement with John S. Frazer, whereby he demised to Frazer the west half of the lot for the term of four years from the 15th day of June next, *on condition*, that Frazer should pay to the plaintiff at the rate of $3 per acre, for the land demised, by installments, viz. one fifth thereof on the said 15th June, and the residue in four equal annual payments, with interest annually, and should pay the taxes, &c. On performance of these conditions, the plaintiff bound himself to execute to Frazer a good and sufficient deed of the premises. In the summer or fall

*If such person cuts timber for any purpose other than the cultivation, improvement and enjoyment of the land as a farm, the timber thus separated from the freehold, becomes the personal property of the owner of the inheritance, who may maintain an action of trover for it, against any one in possession though a bona fide purchaser under the occupant.*

of 1826, James F. Frazer bought of John S. Frazer a number of *pine trees* standing on the lot, paid for and cut them into saw logs, to the number of 800, and drew them to the bank of the river, where he sold them to Griffin, one of the defendants, who, by his agent Wait, the other defendant, marked the logs, floated them down the river and had them sawed into boards and plank. The plaintiff demanded the logs of the defendants, and brought this action to recover their value.

At the date of the agreement the whole of the premises described in it were wild and uncultivated ; the timber cut was the principal part of the valuable pine timber on the land ; it did not appear to have been cut with a view to cultivation ; the place where it was cut was not the best land for that purpose, and none of it has been put into a state of cultivation ; the value of the lot was greatly reduced by the cutting off of the pine timber. After the timber was cut and the logs taken by the defendants, the agreement between the plaintiff and John S. Frazer was surrendered up.

The presiding judge decided upon this state of facts, that, under the lease, the lessee had a right to enter and enjoy the premises ; that as the whole lot was covered with wood and timber, he could not enjoy it without cutting off some part of the trees and timber, and the plaintiff not having restricted him as to any particular kinds of trees he might cut, he had a right to cut such as he pleased and to sell them, subject to be restrained by a court of equity if he committed wanton injury to the property ; that the principles applicable to waste, committed on leasehold property, by cutting timber, where a part of the land was cultivated, and could therefore be enjoyed without cutting timber on other parts of it, were not applicable to a case like this ; and that the plaintiff, therefore, was not entitled to recover. The plaintiff submitted to a nonsuit, with leave to apply to set the same aside.

*W. Kent*, for plaintiff, now moved to set aside the nonsuit. The agreement conferred no other rights on Frazer than those of a tenant for years. Felling the timber for any oth-

er than agricultural purposes, was *waste*. Allowing that tim- ber might be cut, it could not be carried to such an extent as to do an irreparable injury to the inheritance. Whether the party in this case had abused the rights which the agreement gave him, should have been submitted to the discretion of a jury, under the charge of the court. It is manifest, that by withholding the deed, the plaintiff looked to the land as his security; which would be no security if the lessee might render it useless and of no value by stripping it of its timber. (7 Johns. R. 227. 9 id. 35, 332.) It is waste to cut wood for *sale*. (2 Haywood, 339.) If the seller had no title, the purchaser is liable. (5 Mass. R. 341. 5 Barn. and Ald. 826.)

*S. Stevens*, for defendants. Frazer was in possession under an agreement to sell to him, having a right of immediate entry, and without restraint as to the manner of using the property. Whilst he performed his part of the contract; no action at law would lie against him for cutting timber; he could be restrained only by injunction from chancery; and if so, surely an action cannot be maintained against a *bona fide* purchaser of logs cut on the premises.

Supposing Frazer a lessee for years, what was he to do with the land? It was wild and uncultivated, and he could make no other use of it than what he did. If it be true, that the question might be submitted to a jury to determine whether or not *waste* had been committed by the tenant, the proposition admits that the defendants, as purchasers, cannot be liable; for if the tenant had a right to cut timber to any extent, the purchaser of such timber cannot in reason or justice be subjected to an action for an abuse of such right, for how could he know that there was such abuse. (16 Johns. R. 74.)

*By the Court*, SAVAGE, Ch. J. It has been decided by this court, in the case of *Suffern* v. *Townsend*, (9 Johns. R. 35,) that an agreement to sell land does not imply a licence to enter and cut trees; and also that a licence to enter, would not authorize the cutting timber; for that one licence does not imply the other. In that case, there was a parol con-

tract of sale and purchase, under which the defendant enter-
ed and cut timber; but the contract was not consumated,
and the plaintiff recovered in trespass for the timber cut
while the defendant was in possession. The same point was
again decided in *Cooper* v. *Stower*, (same vol. 331.) In that
case there was a written contract, much like the contract in
this case, except that there was no lease of the lot; but the
defendants produced a contract, signed by Stower, by which
he acknowledged he had received a contract and bond for
the consideration money, which were to be execcted and re-
turned to the plaintiff; and agreed that until the papers were
executed, no timber should be cut on the lot; and it was
shewn that they were executed and returned by the next mail.
The defendants contended that a licence to enter was impli-
ed. The court considered the acceptance of the contract of
Stower a licence to enter and occupy as tenants at will, but
not to commit waste; and that cutting the timber beyond
what was necessary for the use and improvement of the farm
terminated the tenancy at will; and of course the defend-
ants were trespassers. It was there considered that the with-
holding the deed was the plaintiff's security upon the land;
but it would cease to be a security, if the defendants might
lawfully strip the land of its timber, and render it of no value

The contract in this case goes farther, and gives the right
of occupancy for a term of years, on performing certain con-
ditions. It is undoubtedly true, that Frazer had a right to
enter and enjoy the lot which he had contracted to purchase;
but, as was said in *Cooper* v. *Stower*, "the contracts in the
case must be construed reasonably and consistently with the
rights of both parties;" and as cutting off the pine timber
where the land was not suitable for cultivation, was not the
proper and reasonable mode of enjoying the lot for agricul-
tural purposes, Frazer had no right to cut the timber. The
timber constituted the principal value of the land. The land
thus valuable was the plaintiff's security for the purchase
money; and the destruction of the timber was therefore to-
tally unauthorized by the contract. Had it appeared that
the lessee could not enjoy the lot to the best advantage for
the purposes of cultivation and improvement as a farm with-

out cutting the timber in question, a different case would have been presented; and I should think the rights of the parties would be very different : then the cutting, and perhaps the selling would have been justifiable. But when trees, or any thing else attached to the freehold, are unlawfully detached therefrom, the property thus wrongfully separated from the freehold, becomes the personal property of the owner of the inheritance. "Waste is a tort," says Lord Hardwicke, (3 Atk. 262,) "and punishable as such; and the party has also a remedy for the trees cut down, by an action of trover." (2 Cruise, 268.) The case of *Fanant* v. *Thompson*, (5 Barn. & Ald. 826,) is full to the same point. Certain machinery attached to a mill was leased for a number of years. The tenant, without permission of his landlord, severed the machinery from the mill, and in that situation it was sold on an execution against the tenant. It was held that no title passed to the purchaser, and that trover lay for the machinery. The judges, in giving their opinions, compare the machinery, when attached to the freehold, to the case of trees standing which are parcel of the inheritance, to the use of which the tenant has a qualified right during his term, to wit, for shade and fruit. If, however, they are separated by his own wrongful act, or the act of God, the tenant has no right to the use during his term, but they become absolutely vested in the person who has the next estate of inheritance; they become his goods and chattels.

These cases abundantly shew what is constant to good sense and sound policy, as well as justice : that a tenant who commits waste by cutting timber, acquires no title to the timber which he thus unlawfully cuts, and of course can convey none ; and further, that a *bona fide* purchaser from the tenant acquires no title, but is liable in trover to the true owner.

The facts of the case clearly shew that the timber was unnecessarily, and therefore unlawfully cut by Frazer. The logs in question were therefore the property of the plaintiff. The nonsuit must be set aside, and a new trial granted ; costs to abide the event.