Gridley, J.
 

 (Dissenting.)
 
 — This action was trover for the conversion of a-large quantity of pine lumber, which was seized and . sold by the defendant, on an execution against John R. and Hiram Woodworth. The premises on which the timber grew, from, which the lumber was manufactured, were known as lot No. 155, in Richland, in the. county, of Oswego. This lot. had been contracted to be sold to the Woodworths, by an agreement executed by William C. Pierrepont, by virtue of a power conferred upon him by the last will of Hezekiah B. Pierrepont, deceased. The contract contained a clause by which the Woodworths covenanted “ not to cut, or suffer to be cut, ,for sale,- any timber from the said land, without the consent or approbation of'the said party of. the first part, first had and obtained in writing.” The evidence which.was given to prove a license, and which was finally excluded by the judge, was of the
 
 loosest
 
 and most uncertain character. Had it been received and considered, as competent evidence, it might possibly have been regarded as . .a justification for cutting timber on the premises, amounting in value, as assessed, to the sum of $2660. No written permission to cut timber was ever given; and - by the terms of the contract, nothing short-of that could'confer the power.
 

 
 *277
 
 *1. I am of the opinion, that upon principle as well as authority, the evidence was rightly rejected. Why was this extraordinary prohibition inserted in the agreement, in addition to the provisions requiring the payment of a large part of the consideration-money, for the premises? It was, because the principal value of the premises consisted of the timber growing on them; and to secure the plaintiffs against the consequences of mistakes and frauds and perjuries. By admitting the evidence, the judge would have defeated the intentions of the vendors, in requiring the license to be in writing. The object of the parties was the same that induced the legislature to enact the statute of frauds itself. It was, because the plaintiffs foresaw that a paroi license might be misunderstood;- that if there were important conditions annexed to it, those might be forgotten; and if the license was only extended within particular limits, or was confined to a particular. quantity-, those limitations might not be borne in mind by a rapacious purchaser; and, in fine, that the most important rights of the owners of lands, whose value consisted mainly in the timber on them, might lie at the mercy of mistaken and unscrupulous witnesses. It was for these reasons, that they imposed the obligations on the purchasers in the very contract of sale, to cut no timber without a written license; and I think, the judge was right, on principle, in rejecting the evidence, which would have deprived them of the advantages of this stipulation.
 

 ' Again, this rule, which is founded on reasons of such unquestionable weight- and soundness, is also supported by authority. It has been repeatedly held, in England and in this state, that a covenant under seal cannot be discharged by a paroi agreement, before breach.
 
 (Suydam
 
 v.
 
 Jones,
 
 10 Wend. 180;
 
 Kaye
 
 v.
 
 Waghorne,
 
 1 Taunt. 429.) The discharge must be by matter of as high a nature as that which creates the debt or duty.
 
 (Preston
 
 v.
 
 Christmas,
 
 2 Wilson 86.) -This is universally true,
 
 *278
 
 when the action is founded on, or grows out of the deed or covenant.
 
 (Blake’s Case,
 
 6 Co. 43
 
 a; Alden
 
 v.
 
 Blague,
 
 Cro. Jac. 99.) In the case of
 
 Barnard
 
 v.
 
 Darl
 
 ing *11 Wend. 27), the same doctrine was adopted; -I and in
 
 Delacroix
 
 v.
 
 Bulkeley
 
 (13 Wend. 71), the question came again before the court, and Savage, G. J., reviewed all the previous cases, and came to the conclusion, that a sealed executory contract cannot be released or rescinded by a paroi agreement. And where a landlord covenants to make certain alterations and improvements in a store, and by the same instrument, let the store, so to be altered, to a tenant, for a term of years, at a stipulated rent, and by reason of the decay of the building, the landlord was forced to change his plans, and accordingly took down the old building and erected a new one, to which
 
 change of plan
 
 the tenant
 
 assented
 
 (but such
 
 assent was by paroi only),
 
 it was held by the court, in an action by the tenant against the landlord, for the nonperformance of the original covenant, that the evidence of the
 
 assent was inadmissible.
 
 The doctrine was here established, that it was only
 
 after a breach
 
 of the sealed agreement, that a
 
 paroi agreement, executed, becomes a satisfaction.
 
 This doctrine is fully stated in Cowen & Hill’s Notes (p. 1479), and the doctrine is, that a paroi agreement,
 
 being executed,
 
 becomes a
 
 satisfaction
 
 for the breach of the sealed agreement, on the familiar grounds of
 
 accord
 
 and
 
 satisfaction.
 

 To apply the principle of these cases to that now under consideration; if the Woodworths had committed the trespass on the lands of the plaintiffs, and thus bioken the sealed agreement, and the plaintiffs had agreed by paroi, to receive one-half the quantity of boards that the lumber in question produced, in lieu of the timber cut, and the Woodworths had delivered the boards to the plaintiffs, that delivery would have been a satisfaction. The case at bar, however, is in no respect like this. The Woodworths plundered the premises of over $2000 worth of
 
 *279
 
 timber, and have made no satisfaction, and nothing that can be regarded as a satisfaction, to the plaintiffs. The transfer of the indorsement from one contract to the other, at the request and for the benefit of the Woodworths, was no advantage to the plaintiffs; and the manufacture of the lumber, and the expenditure of ‘labor and money on it, for their own benefit, ... was no
 
 satisfaction
 
 to the plaintiffs for the loss of *- their timber, or for the breach of the sealed agreement in the commission of the trespass. It was no satisfaction, either in fact or in law. The payment of a part, is no consideration for giving up the residue of a demand. (5 Johns. 271.) In
 
 Verplanck
 
 v.
 
 Wright
 
 (23 Wend. 506), a covenant just like the one in question was held valid, and the breach of it, a forfeiture of the estate, which was recovered in ejectment.
 

 In
 
 Richardson
 
 v.
 
 Evans
 
 (3 Haddock 118), a lessee was bound not to assign his lease, without a written license ; the lessor consented, by paroi, that he might assign to the plaintiff, and agreed to ratify the assignment. On a bill filed by the plaintiff against the lessor, to compel the lessor to perform his agreement, alleging some
 
 circumstances of fraud, which he failed to prove,
 
 Sir John Leach, vice-chancellor, dismissed the bill, saying that
 
 no relief could he granted against such a covenant, in equity, any more than at law,
 
 unless the defendant should prove fraud on the part of the lessor, and that the plaintiff, relying on the paroi consent, had incurred some loss or damage. Now, two things are apparent from this decision ; first, that at
 
 law
 
 there is no relief for a party who has acted on a paroi license, when he had agreed, under seal, that nothing but a written one should confer any authority; and secondly, that equity will give no relief, unless circumstances of fraud, in addition to a consent by paroi, are proved; so that in the case at bar (there being no satisfaction of the breach after it had occurred), the defendant can have no relief at law.
 

 
 *280
 

 Roe
 
 v.
 
 Harrison
 
 (2 T. R. 425) was a case in a court of law, where a tenant had assigned a lease, notwithstanding a covenant not to- assign, except by virtue of a
 
 writ ten license,
 
 and an ejectment was brought for the forfeiture incurred by the assignment. The defendant set up a paroi license to let a part of the premises, which, it was contended, waived the forfeiture as to the whole, and authorities were cited on that point. Buller, J., remarked,
 
 “
 
 This case does not come within the authorities, for here is no
 
 legal consent
 
 to let any part of the , _ premises.” ^Unless these cases are to be overyüx I A 1 J thrown, I see no defence, m an action at law» growing out of the facts on which the defendant relies.
 

 II. Independently of the stipulation providing that the license should be of no validity, unless in writing, the license itself is in direct violation of the
 
 statute of frauds,
 
 and is
 
 utterly void
 
 for that reason. And that, whether the license be
 
 executed or not.
 
 At
 
 law,
 
 the license is
 
 void,
 
 and cannot be set up, even when executed, in a suit brought for the doing of the act in pursuance of the license;, the party must seek his relief in equity on the ground of part performance.
 

 (1.) The license is this case to cut 700,000 feet of growing timber, was a license, transferring to the Woodworths that amount of the real property of the plaintiffs, or, if there was a consideration for the license, then it was a paroi contract for the sale of about one-third in value of the lot in question. The growing trees were real estate, and were the most valuable part of the real estate, contracted to be sold by the plaintiffs to the Woodworths; and the title to this real estate could not be changed, by cutting and removing it, without any
 
 legal right.
 
 It still remained the property of the plaintiffs, in its altered condition, and the legal right of the plaintiffs to control it, for all the purposes of property, remained unaltered. A grant of
 
 growing
 
 wood is a grant of real estate, and is within the statute of frauds. See many cases collected
 
 *281
 
 in the first volume of Hilliard’s Abridgment of the law relating to real property (1 Hilliard, pp. 6, 7).
 

 In
 
 Green
 
 v.
 
 Armstrong
 
 (1 Denio 550), it is held, in an elaborate judgment delivered by Mr. Justice Beardsley, that an agreement for the sale of growing trees, with a right to enter on the land, at a future time, and remove them, is a contract for the
 
 sale of an interest in land,
 
 and to be valid, must be in writing. In
 
 Moore
 
 v.
 
 Wait
 
 (3 Wend. 104), it was decided, that a person contracting to purchase, with a right of
 
 entry
 
 and
 
 occupancy,
 
 had a right to occupy the land for agricultural purposes, but that he had no right to cut timber, except for the purpose of
 
 cultivation;
 
 and
 
 that such timber, when *cut, be-
 
 ...
 
 comes the personal property of the owners of the
 
 ^
 
 inheritance, who could maintain trover for it, against any one in possession of it, even though he was a bond fide purchaser under the occupant.
 

 It follows, then, that if the paroi license under consideration, was, in law, a sale of real estate, then the timber, when cut, was cut without any legal right, and remained the property of the owner of the land, who might bring trover for the conversion of it. So far, the rights of these parties would seem to be entirely clear. But the ingenious counsel for the defendant has advanced a proposition, plausible on its face, and apparently quite equitable, viz., that a
 
 license executed,
 
 like the one in the case before the court, cannot be revoked, and constitutes a good defence in an action at law: but—
 

 (2.) This defence resting on an
 
 executed license,
 
 is applied by the authorities solely to a- license, which is not within the statute of frauds. The following cases,
 
 Webb
 
 v.
 
 Paternoster
 
 (Palmer 71), a license to stack hay on another man’s land;
 
 Wood
 
 v.
 
 Lake
 
 (Sayer 3), a license to stack coal on another’s land for seven
 
 years; Winter
 
 v.
 
 Brockwell
 
 (8 East 108), a license to erect a skylight, on an area on another’s land, by which a window of plaintiffs was darkened;
 
 Taylor
 
 v.
 
 Waters
 
 (7 Taunt. 374). a license
 
 *282
 
 to enter- an opera house by virtue of a silver ticket pur chased of a former owner of the house;
 
 Rerick
 
 v.
 
 Kern
 
 (14 S. & R. 267), a license to turn a water-course;
 
 Liggins
 
 v.
 
 Inge
 
 (7 Bing. 682), a license to erect a weir, are the principal authorities, in which it- has been held that a license executed was not revocable; and it was so held, because they were regarded as cases of a
 
 license, strictly speaking, not conveying an interest in lands.
 
 I cite the language of Gibbs, C. J., in
 
 Taylor
 
 v.
 
 Waters,
 
 to show what views the court entertained, in holding these licenses irrevocable. After reviewing the previous cases, the learned chief justice says, “ these cases abundantly prove, that a license to enjoy a beneficial privilege on land, may be granted,
 
 without deed;
 
 and notwithstanding the statute of frauds,
 
 without writing;
 
 what the plaintiff claims, is a license of this description, and
 
 not an
 
 * 300 1
 
 *^eresi
 
 Gourgas pai(l a valuable con- -* sideration to Taylor, for these tickets.”
 

 In
 
 Mumford
 
 v.
 
 Whitney
 
 (15 Wend. 380), Chief Justice Savage reviews the previous cases, and declares that they are not all reconcilable, and he will not undertake to reconcile them. But, he says, “ they all agree in this, that any permanent interest in the land itself cannot be transferred, except by writing. Much of the discrepancy may have arisen from the different ideas attached to the word
 
 license.
 
 If we understand it as Chancellor Kent defines it, it seems to me, there can be no difficulty; it is an authority to do a particular act upon another’s land; is founded in personal confidence, and is not assignable. For example, A. agrees with B., that B. may hunt or fish on his, A.’s land; A. thereby gives B. a license for that purpose; this gives B. no interest in the land; he cannot authorize any other person to go upon the land; it is a personal privilege granted to B. alone. If, after A. has given his consent, .and before B. has entered upon his land, A. changes his mind, he has a right to do so, and forbid B. from entering upon his land for the speci
 
 *283
 
 fled purpose. "The license is thus far executory, and may be revoked at pleasure; if B. afterwards enters, he is a trespasser. If, however, B. enters, before any revocation of the license, the license is then executed; and it is not competent for A. to revoke it, and make B. a trespasser.” He then speaks of the distinction between such a case and the one he. was then considering, which was the license to build the abutment of a dam upon Mumford’s land, which he considered a permanent
 
 interest in land, and though executed by Whitney, at considerable expense, was void, being in violation of the statute of frauds.
 
 Now, this decision has ever since been considered as settling the true line of distinction, in this state, between those licenses, which, being
 
 executed, are irrevocable,
 
 and those which are within the statute of frauds, and are
 
 void
 
 at law, whether they have been executed, or remain executory.
 

 I now propose to state a few of the cases in which licenses have been held void, under the statute of frauds, and as furnishing no defence in an action at *law, notwithstanding they have been executed, at great expense, and a valuable consideration *- paid for the privilege. The first I shall allude to, is
 
 Cook
 
 v.
 
 Stearns
 
 (11 Mass. 536). The action was trespass, for entering the plaintiff’s close, and digging up the soil; the defendant pleaded that he was the owner of a mill and dam, near the plaintiff’s close, part of the dam having been constructed on the plaintiff’s land, by the consent of the owners, and, it being necessary to repair the same, the defendant entered for the purpose of making repairs. The plaintiffs demurred to the plea, assigning for cause, that there was no
 
 conveyance.
 
 For the defendant, it was urged, among other things, that there was a
 
 license,
 
 which being
 
 once executed, was not revocable.
 
 Pakkee, O. J., delivered the opinion of the court, that the claim of the defendant was for a right to maintain a dam and canal, which were formerly placed
 
 *284
 
 there by consent, and to enter, at any time, to make repairs. • This, he says, is an
 
 interest in lands which cannot pass without writing.
 
 The counsel for defendant had contended, that such a license might be by paroi, and that,
 
 after it was executed, it could not be countermanded. “
 
 This argument,” says the learned chief justice, “ had some plausibility in it, when ■ first .stated, but on mature consideration, it seems to have no- foundation, in the principles, of law. A license is, technically, an authority to do some act on the land of another, without passing any estate in the land; but licenses, which in their nature amount to the granting of an estate, for ever so short a time, are not good without deed. The distinction is obvious; licenses to do a particular act, do not trench on the policy of the law which requires that bargains respecting the title or interest in the real estate shall be by deed or in writing.” The plea was held bad, on the ground that the interest claimed was not in the nature of a license, but of an
 
 estate,
 
 or, at least, an
 
 easement
 
 in the land, which could not be acquired without writing or prescription.
 

 In
 
 Fentinam
 
 v.
 
 Smith
 
 (4 East 108), a paroi license was granted, to make a tunnel through defendant’s land, to convey water to plaintiffs’ mill. The plaintiffs had * 302 1 a&reec^ f°r the consideration *of a guinea, to allow the tunnel to be made, and even assisted in making it, but there was no conveyance. The guinea was tendered, but the defendant refused to receive it, and diverted the water. Lord Ellenborough said, the right claimed was an
 
 interest in land,
 
 and could not pass
 
 without deed.
 
 In
 
 Hewlins
 
 v.
 
 Shippam
 
 (5 B. & C. 210), the defendant and his landlord granted, by paroi, a right to dig a drain through their land, at plaintiff’s expense, to discharge the foul and refuse waters from an inn, and a suit was brought against the defendant, for
 
 obstructing the drain, and
 
 it was held by the court, that the action would
 
 *285
 
 not lie, notwithstanding the license was
 
 executed,
 
 as the interest conveyed was
 
 an interest in lands.
 

 Again, in the case of
 
 Bryan
 
 v.
 
 Whistler
 
 (8 B. & C. 288), an action was brought against the rector of a church, for opening a vault and burying a corpse in it. The vault had been constructed by the plaintiff, by virtue of an agreement with the-defendant, and on paying him
 
 201.
 
 for the privilege; in consideration of which, the defendant 'had agreed that the plaintiff should have the exclusive use of the vault. . The plaintiff’s counsel relied on the cases above cited, where a license had been held irrevocable, after it was executed, but the court, on a rule to show cause, ordered a nonsuit to be entered, on the ground, that the
 
 right claimed was either an easement or an interest in lands,
 
 and in either case, could not pass without writing. In
 
 Cocker
 
 v.
 
 Cowper
 
 (1 C., M. & R. 418), it was decided, that a verbal license was not sufficient to convey an easement in another’s land, and that it" was revocable,
 
 though acted upon.
 
 The same decision was made in
 
 Bird
 
 v.
 
 Higginson
 
 (4 N. & M. 505).
 

 In the case of
 
 Miller
 
 v.
 
 Auburn and Syracuse Railroad Co.
 
 (6 Hill 61), an action was brought to recover damages for erecting and continuing an embankment on Garden street, in Auburn, whereby the plaintiff was disturbed in his ingress upon, and egress from certain of his lots, lying on the north and south sides of the street. The defendants offered to prove, that the embankment and railroad were made under a paroi license of the
 
 plaintiff;
 
 this ^evidence was excluded, and a motion for a new trial was made • and refused. Cowen, J., *- in delivering the opinion of the court, says, “If the plaintiff was to be considered as the owner of the road, there can be no doubt, that he was incapable of granting by paroi, the right claimed by the defendants. It would be a right to
 
 enter on and occupy
 
 his premises by the railway, for an indefinite length of time, without a conveyance. sufficient within the statute of frauds, to convey a
 
 *286
 
 freehold,” citing
 
 Mumford
 
 v.
 
 Whitney
 
 (15 Wend. 380);
 
 Bridges
 
 v.
 
 Purcell
 
 (1 Dev. & Bat. 492); 1 Chit. Gen. Pr. 336-40. The learned judge then cites the English cases holding a license executed to be irrevocable, to which I have adverted, and says: “ These cases evidently let in a verbal distinction, under which, if retained and made applicable in its full extent, the statute of frauds would, in many important respects, be repealed. Parol licenses,
 
 irrevocable,
 
 would be made to pass a freehold; the well-established rule of the common law too, that easements and other incorporeal hereditaments shall pass by deed only, would be nearly repealed.” He afterwards says, “Many of these cases do conflict with these doctrines, and have been accordingly much qualified, if not entirely overruled, in the English as well as American courts.”
 

 I now cite the sixth edition of Kent’s Commentaries, note F. to p. 451, where several other authorities are collected, showing that the tendency is, at this time, in the English courts, to overrule the class of cases to which
 
 Wood
 
 v.
 
 Lake
 
 and
 
 Taylor
 
 v.
 
 Waters
 
 belong, as irreconcilable with a just construction of the statute of frauds. I also cite Chit. Gen. Pr. (vol. 1, pp. 336 to 340), to show,, that in England, at the present day, those cases are regarded as of no authority, and I rely particularly on the language of Sugden, in his Treatise on Vendors and Purchasers (8th ed. 745), where he comments upon, and pointedly condemns the most of this class of cases, which obtained for a time in the English courts, as being in the teeth of the statute of frauds, and not to be supported. Now, I beg leave to say, that it never was * qri/f
 
 i
 
 Prended, in England, that a license, which *fell -* within the statute of frauds, could be upheld, notwithstanding it had been executed, and a valuable consideration paid for the privilege; but the error of these cases consisted, in holding that certain paroi licenses, conveying an' interest in lands and creating a right to easements, were not within the statute of frauds.
 
 *287
 
 In the ease before the court, therefore, if it be admitted that a license, under which standing timber to the value of over $2000 has been taken from the premises in question, and the lot then abandoned by the trespassers, did not convey a right to real estate, and that the title to that real estate remains unchanged by the acts of the trespassers, there can be no question respecting the rights of the plaintiffs to hold the judgment they have recovered.
 

 But it will be asked, is there no remedy for a party who has proceeded under a paroi license, and expended his money and labor on the timber in manufacturing it into lumber ? I answer, there is no remedy at law, any more than there is in a case where a man purchases a hundred acres of land by contract, and expends $1000 in improvements upon it, and is sued in ejectment, by the owner of the legal estate. In both cases, he may file his bill in chancery for relief, when that court will see equal and exact justice done to both parties. At law, there is no remedy, and the defendant, before he can have any relief, must seek it at the door of another tribunal.
 

 Edmonds, J., also dissented.
 

 Judgment reversed, and new trial awarded.
 
 [1]
 

 [1]
 

 It appears to be the settled doctrine in this state, that a paroi, license to do an act upon the land of another, such as, the cutting and carrying away of timber, is not within the statute of frauds, and when executed, is not revocable, so as to make the licensee a trespasser, by relation. Bennett
 
 v.
 
 Scott, 18 Barb. 347 ; Hobbs
 
 v.
 
 Wetherwax, 38 How. Pr. 385 ; Killmore
 
 v.
 
 Howlett, 48 N. Y. 569 ; Brown v. Stanclift, 3 Bright. Dig. 4874. But a paroi license conferring an casement in the lands of another, such as, the right to enter and build a dam, is within the statute, and revocable, at any time. Babcock
 
 v.
 
 Utter, 1 Abb. Dec. 27 ; s. c. 1 Keyes 115, 397. The cases in which the opposite doctrine has been held, appear to have proceeded on the ground, that a contract, partly executed, by taking possession and making valuable improvements, would be enforced in equity by a decree for specific performance. This was the case in Rerick
 
 v.
 
 Kern, 14 S. & R. 267, which however, in Jamieson
 
 v.
 
 Millemann, 3 Duer 255, was declared not to be
 
 *288
 
 the law of this state, or in this country, outside of Pennsylvania, Babcock
 
 v.
 
 Utter,
 
 supra. ■
 
 But a paroi license is effectual to justify everything that may be done under it, prior to its revocation. Selden
 
 v.
 
 Delaware and Hudson Canal Co., 29 N. Y. 634 ; Cayuga Railway Co.
 
 v.
 
 Niles, 13 Hun 170.