# ROCKINGHAM,

## DECEMBER TERM, A D. 1852.

25  361
72  130

## CLEMENT *v.* WHEELER & a.

A tenant for life, without impeachment of waste, can do no act to affect the inheritance in an unreasonable or unconscientious manner.

In general, such a tenant may cut down timber and convert it to his own use.

But he cannot commit malicious, or, as it is called, equitable waste, so as to destroy the estate.

He cannot cut trees, planted or left standing, for the ornament or shelter of a mansion-house or grounds.

The remedy, by injunction, is applicable to every species of waste, it being to prevent a known and certain injury.

The assignee of a tenant for life, without impeachment of waste, may, in a proper case, be restrained by injunction from committing waste.

The general rule in equity as at law is, that the prevailing party is entitled to costs.

To take a case out of the rule, the failing party must show that it would be unjust for him to pay costs.

A bill was filed against a tenant for life, without impeachment of waste, by the person in remainder, to stay the commission of waste. It did not appear that the tenant had committed any waste, and the bill was afterwards dismissed by the act of the plaintiff. *Held,* that the tenant was entitled to costs.

Where orders have been made by the court, in the progress of a suit in equity, and disregarded by the plaintiff, it is discretionary with the court to order the bill to be dismissed summarily, or to allow the party further time.

Where a party fails to comply with the orders made in the cause, the question of costs may be settled at the time, or may be reserved to abide the event of the suit.

Where the orders of court are disregarded, the case is, in substance, within the class where bills may be dismissed for want of prosecution.

23

Clement *v.* Wheeler.

In Equity. The bill stated the following case.

The plaintiff, Rodney Clement, is the son of Samuel W. Clement, who died testate, on the 10th of May, 1838, owning his homestead farm, in Salem, containing one hundred acres, and ten acres of wood land in Windham.

By his will, he devised the occupation and improvement of all his real estate to his wife, Elizabeth, during her natural life, without impeachment of waste. To the plaintiff he devised one fourth part of all the real estate of which he might die seized and possessed, but not to come into possession of the same until the death of his wife; and he made a similar devise of the remaining three-fourths to Samuel Clement, a brother of the plaintiff. Samuel died intestate and unmarried, on the 16th of February, 1846, leaving his mother, Elizabeth, the plaintiff, and two sisters, his heirs at law, whereby the plaintiff became seized of seven-sixteenths of the land described.

Elizabeth Clement is still living, and on the 13th of September, 1846, she released all her interest in the homestead farm and the wood land to Delia D. Clement, her daughter, who, in the year 1847, married Day Wheeler, and Wheeler and his wife have, both before and since the marriage, occupied the land, which has upon it a large quantity of valuable timber. Wheeler and his wife have already cut off a portion of the timber, and threaten to cut the remainder, and are offering to sell it.

The bill prays that the defendants may be restrained, by injunction, from cutting the timber from the land, and for an answer, &c.

The answer, among other things, stated that it was the intention of Samuel W. Clement to make adequate provision for the support of his wife, Elizabeth, during her natural life; " and to that end devised to her the occupation and improvement of all his real estate during her natural life, without impeachment of waste, well knowing that any income that could be derived therefrom by her, without ad-

vantage or benefit from the clause ' without impeachment of waste,' would of necessity fall short of the object intended, and the defendants believe that such knowledge and intention may fairly be inferred from the provisions of the will, in connexion with the nature and condition of the property devised; the rent of the homestead farm, with impeachment of waste, not exceeding fifty dollars by the year, and the wood lot in Windham being incapable of yielding any income whatsoever, except from the sale of the wood and timber thereon." The answer then states that Elizabeth Clement, owing to her age and infirmities, became desirous of being relieved from the burden of managing the real estate, and therefore sold and conveyed her interest in it to her daughter, Delia D. Wheeler, and also some personal property, not exceeding $135 in value, in consideration of which Delia gave her bond, conditioned to maintain her during life; that the personal property conveyed to Delia has long since been consumed in the support of Elizabeth, together with all the income of the real estate; that Elizabeth cannot be supported, agreeably to the manifest intentions of the will, by means of the occupation of the real estate, without aid from the exercise of the rights, or some of them, conveyed by the clause " without impeachment of waste," and that the defendants claim to exercise, by virtue of the conveyance from Elizabeth to Delia, all the rights relating to the real estate which Elizabeth could have by virtue of any provisions in her favor contained in the will; that while Elizabeth occupied the homestead farm and the wood lot she was in the habit of cutting and selling the wood thereon, by virtue of the provisions in the will; that neither Elizabeth nor the defendants can derive any income from the wood lot except by the sale of the wood and timber thereon; and if prevented from so doing, the wood lot, by means of the taxes yearly assessed upon it, would be a burden instead of being a benefit to them, and the good inten-

tions manifested in the will would be entirely defeated, so far as relates to the wood lot.

On the fifth of December, 1849, a temporary injunction was issued, agreeably to the prayer of the bill. At the December term, 1849, the injunction was so modified as to place the defendants upon the footing of ordinary tenants for life, subject to impeachment of waste, and so to continue until further order of this court, and it so continued until the bill was dismissed, at the July term, 1852. The defendants filed their answer on the 12th of March, 1850, according to the order of the court, and at the July term, 1850, obtained a rule upon the plaintiff, to file his replication by the first of September. At the December term, 1850, the rule not having been complied with, the time was extended sixty days. At the July term, 1851, the cause was set down for a hearing on the bill and answer, no replication having been filed, and an order was made that the plaintiff should furnish his brief by the 15th of October, and that the defendants should furnish their brief by the 15th of November. The plaintiff did not comply with this order. At the December term, 1851, it was ordered that the plaintiff should pay to the defendants their costs for travel and attendance for that term, and should tax no costs himself; and that the plaintiff should furnish his brief by the first of February, 1852, and the defendants should furnish their brief by the first of April following. This order, also, the plaintiff failed to comply with. Each party now moves for costs, and the question is which, if either, is entitled to costs.

*Porter*, for the defendants.

It will be seen that the defendants were prompt in filing their answer to the plaintiff's bill, and that from the time the answer was filed until the bill was dismissed, no delay has been caused by them. The plaintiff, by his conduct, has prevented the cause from coming to a hearing on its

merits, the defendants having always been ready, and the plaintiff never so.

It is unnecessary to say any thing more touching the merits of the bill than that the dismissal of the bill by the plaintiff, thereby excluding all consideration of the merits, is a sufficient admission, so far as regards the costs, that the suit was wrongfully instituted. The defendants became the prevailing party. Under these circumstances, there are no equitable grounds why the defendants should pay costs, and there is every reason why they should recover costs against the plaintiff.

*G. C. Bartlett,* with whom was *Marston,* for the plaintiff.

GILCHRIST, C. J. It is unnecessary to refer to the allegations in the bill and answer, farther than to show what the facts were at the time the bill was filed, in order to ascertain whether the plaintiff had any reasonable ground for complaint. But an inquiry is necessary, to a certain extent, into the merits, because the result has a bearing upon the question of costs.

Elizabeth Clement was tenant for life, without impeachment of waste. Such is the allegation in the bill, and the admission in the answer. It is relevant to the question now before us, to inquire what such a tenant may legally do.

Chancery will interpose where the tenant affects the inheritance in an unreasonable and unconscientious manner, even though the lease be granted without impeachment of waste. *Perrot* v. *Perrot,* 3 Atk. 94 ; *Aston* v. *Aston,* 1 Ves. 264. These cases are referred to, as containing the law on this point, by Chancellor *Kent,* in the case of *Kane* v. *Vanderburgh,* 1 Johns. Ch. 11. At common law, timber cut by the tenant for life, belonged to the owner of the inheritance, and the words in the lease, " without impeachment of waste," had the effect of transferring to the lessee the property in the timber. *Mooers* v. *Wait,* 3 Wend. 104 ; *Payne* v. *Dor,* 1 T. R. 55. And in general the words *absque impe-*

*titione vasti,* that is, "without challenge or impeachment of waste," enable the tenant for life to cut down timber and convert it to his own use. By the statute of *Marlbridge,* ch. 23, it appears that lessees for life could not rightfully sell the trees or pull down the houses, unless the lessor had by deed granted them the power to do so. When that act was passed the clause "without impeachment of waste" was in use, "which proves that it was to such purpose that the lessee might commit waste, and dispose it to his own use, which he could not do without such clause." *Bowles' case,* 11 Co. Rep. 81.

But the extensive power given to the tenant for life by this clause may be exercised by him contrary to conscience, and in an unreasonable manner. It will, therefore, be so far restrained that he will not be allowed to commit malicious waste, so as to destroy the estate, which is called equitable waste. A leading authority upon this point is *Vane* v. *Lord Barnard,* 2 Vernon, 738, commonly called "*Lord Barnard's case.*" The defendant, on the marriage of the plaintiff, his eldest son, settled Raby Castle on himself for life, without impeachment of waste, remainder to his son for life, and to his first and other sons in tail male.

Afterwards, having taken some displeasure against his son, the defendant got two hundred workmen together, and of a sudden, in a few days, stripped the castle of the lead, iron, glass doors and boards, &c., to the value of £3,000. The son then filed a bill for an injunction to stay waste, stating that the defendant had proceeded to demolish the castle, and had pulled down one of the rooms and sold the timber, lead, iron, and other materials, and converted the money, being a considerable sum, to his own use. " The joists on which the floors were laid being each a whole oak tree, the said castle being heretofore very strongly built, and made use of for a fortification," Lord Cowper immediately granted an injunction to stay the commission of waste in pulling down the castle, and afterwards decreed that the injunction

should be continued, and that the castle should be repaired. And the court will restrain the tenant for life, without impeachment of waste, from committing equitable waste by cutting timber, planted or left standing, for the shelter or ornament of a mansion-house or grounds. *Packington* v. *Packington*, 3 Atk. 215; *Strathmore* v. *Bowes*, 2 Brown, Ch. C. 88. This principle has been extended from the ornament of the house to out-houses and grounds, then to plantations, vistas, avenues, and to all the rides about the estate for ten miles round. Lord *Eldon, Devonshire* v. *Sandy's*, note, 6 Ves. 110; *Sir William Grant, Mahon* v. *Stanhope*, 3 Madd. 523, note. The remedy by injunction is applicable to every species of waste, it being to prevent a known and certain injury. *Hawley* v. *Clowes*, 2 Johns. Ch. 122.

The defendants in the present case derive their title from Mrs. Elizabeth Clement, the devisee under the will, having a conveyance of all her interest in the land. They may exercise all the rights which their grantor possessed, but of course would be liable for exceeding the powers given them by her conveyance. In the case of *Coffin* v. *Coffin*, Jac. 70, the defendant, J. P. Coffin, who was tenant for life, without impeachment of waste, assigned his life interest to one Rowe, who was also a defendant, and Rowe was about to fell certain timber, but was restrained by injunction.

Now the defendants do not, upon the facts admitted, come within any class of persons who would, upon the authorities, be restrained by injunction from committing waste. It does not appear that they have done any acts which a tenant for life, without impeachment of waste, may not lawfully do. The bill, therefore, was in its origin improperly brought, and had no foundation, and was finally dismissed by the act of the plaintiff. They are, therefore, clearly the prevailing parties, and in that capacity entitled to costs by the statute, Revised Statutes, ch. 191, § 1; for the event of the suit is in their favor, and the costs are to follow the event, and there is no reason why we should ex-

ercise the discretionary authority which the statute gives us, and deny the defendants their costs.   They stand like any other persons, against whom a groundless proceeding has been commenced, and afterwards abandoned.   The general rule, as well in equity as at law, is that the prevailing party is *prima facie* entitled to costs.   *Vancouver* v. *Bliss,* 11 Ves. 463; *Colburn* v. *Sim,* 2 Hare 543; *Bryant* v. *Russell,* 23 Pick. 508.   The failing party must show the court that it would be contrary to the ordinary principles of justice that he should pay the costs of the proceeding.   It is not usual to give costs " where the unfortunate claimant has color of claim, and is barred by lapse of time."   *Demarest* v. *Wynkoop,* 3 Johns. ch. 147.   But no case is shown here to authorize the court to interfere, and take the question of costs out of the effect of the ordinary rule.

The other facts stated in the case, relating to the noncompliance, by the plaintiff, with the various orders made by the court, in the progress of the cause, certainly do not tend to establish any claim in his favor for costs.   These orders he disregarded, and it was a matter within the discretion of the court whether his bill should be summarily dismissed, or whether further time should be allowed him.   In such cases, the costs may be settled at the time, or the question may be reserved to abide the event of the suit.   1 Sim. & Stew. 357; *Scarborough* v. *Burton,* 2 Atk. 111.   Here the extreme dilatoriness of the plaintiff, for which no excuse was given, sufficiently authorized the court to dismiss the bill, the case being in substance within that class where bills may be dismissed for want of prosecution.   2 Daniels' Ch. Pr. 931.   We shall, therefore, decree

*Costs for the defendants.*