At common law the reversioner could not maintain an action of trespass against a stranger, for an injury done to the reversioner, while a tenant was in possession, because the person in the actual possession only could maintain trespass. (1 Chitty's Pl. 179.)
Waste was the proper remedy for an injury done by the tenant, or an action on the case might be maintained against either the tenant or a stranger, by the reversioner. (1 Chitty's Pl. 142.)
1 Revised laws, 527, chap. 56 of session laws of '36 session, § 33, changed the common law rule and provides that it shall be lawful for any person or persons seised of an estate in remainder or reversion to maintain an action of waste or trespass for any injury done to the inheritance, notwithstanding any intervening estate for life or years.
It was held under this statute, in Livingston v. Haywood,
(11 J.R. 429.) that the action of waste mentioned *Page 29 
in the statute was given to the reversioner against the tenant, and the action of trespass against a stranger only; that under it trespass would not lie against the tenant nor waste against a stranger.
In Livingston v. Mott, (2 Wend. 605,) it was held that the under-tenant of the lessee, was not a stranger, so as to subject him to an action of trespass by the reversioner; that being in under the lessee, he was entitled to the same protection that the lessee would be, if the action had been against him.
Although trespass will not lie against the tenant or his assignee, waste, or an action on the case in the nature of waste, will lie, as we have seen, against those parties, by the reversioner. (1 Chitty's Pl. 142; Short vs. Wilson, 13 J.R. 33; 2 Saund. 252, note.)
Under the code it is not very material what form of action will lie against a party on a given state of facts. The material inquiry is, will any lie? If an action will lie, the plaintiff may have relief adapted to the case made by his proof.
We now come to the inquiry: What relation did the defendant hold to Mrs. Van Dusen and the plaintiffs? Was he in as tenant, or was he a stranger merely, and liable as such? The widow was tenant for life, and as such had the right of occupancy. She had no right to sell or agree to sell the farm; 1st. because she did not own it; and 2d, she had no authority from those owning the farm to convey or agree to convey their interest in the farm. She had a right to assign her term, or to under-let for any length of time not exceeding her life. When, therefore, she agreed with the defendant to sell the premises and give him possession and the right to do what work he should see fit or necessary to do on the farm, provided he could get rid of Long who was in as tenant of Mrs. V.D., the entry and occupancy was not tortious as to her, and he was not a trespasser for either entering on or working said farm. *Page 30 
Although the contract could not operate as a contract of sale, it could and did operate as a license to enter and occupy until such license was revoked, and there was no revocation until all the acts complained of were done. The defendant must be deemed, it seems to me, to have been in possession of the farm as the tenant of Mrs. Van D., and clothed with her rights in regard to the occupancy and management thereof. In examining the acts done by the defendant, therefore, the true test of liability will be, would Mrs. V.D. have been liable if they had been done by her? If so, then he is liable; otherwise not.
A tenant for life of farming land is entitled to cut down and use so much of the standing timber on the farm as may be necessary for fuel, for making and repairing fences and buildings; and if the land is wild and uncultivated, he may cut down so much of the timber as may be proper for the purposes of cultivation; but he may not remove it so as to materially lessen the value of the inheritance. (4 Kent's Com. 76; Jackson v.Brownson, 7 J.R. 227.)
When the defendant went into possession of the farm in question, there was not standing timber enough upon it for the use of the farm. He cut down one-half of what remained for the purpose, it is said, of clearing up and cultivating the low swamp land on which it grew. And it is insisted that good husbandry demanded these things to be done. If the timber was necessary to the use of the farm, he had no right to remove it, because Mrs. V.D. had no such right. And the question, I apprehend, is not one to be submitted to a jury, whether, when a tenant cuts and carries away standing timber required for the use of the farm, it is or is not good husbandry, or whether it (the farm) is worth more or less by reason of it. The law forbids the act to be done, and the reversioner has the right to damages if it is done.
The reversioner may, however, waive this right, and consent to the cutting down and removal of the timber. It *Page 31 
was for the referee in this case to find whether in view of the circumstances under which the defendant entered; the knowledge by the plaintiffs of the mode in which he entered; their knowledge of his cutting the timber, and then omitting to object to it, and their anxiety to have the defendant perform his agreement with them, whether they did not consent to the acts of the defendant, for the doing of which this action is brought. He has not found directly on this point; nor was he requested to find upon it; and perhaps we are compelled to hold that his findings in this case cover and include the point in question — particularly if it is to be deemed necessary to sustain his judgment. But if they did consent to the cutting down of the timber, they did not therefore abandon their claim to the timber itself. It might well be they would assent to the defendant exercising his judgment in regard to the way in which he would manage the farm in view of his being in as purchaser, provided he should ultimately perfect his purchase, and in that event the timber cut would become the property of the defendant. But if he should fail to perfect his title, the value of the timber cut would belong to the plaintiffs. In such case the cutting of the timber would not be tortious, and the plaintiffs' claim against the defendant would be limited to the value of the timber cut. Perhaps even that would depend somewhat on whether he or the other party to the contract was responsible for the breach of it. Had the plaintiffs contracted to sell and convey the land, and permitted the defendant to enter and cut timber necessary to the use of the farm, I apprehend they could not recover for either the cutting or the value of the timber, if they had themselves broken the contract; and if broken by the defendant, he would have been liable for the value of the timber as an item of damages for his breach of the agreement. (Schermerhorn v. Buell, 4 Denio, 422.)
The plaintiffs were not contractors, and hence though they may have lost their right to recover for damages done *Page 32 
to the reversion by cutting the timber, yet they are doubtless entitled to recover its value.
If the defendant is deemed to have been in as purchaser under the contract with Mrs. V.D. and to be entitled to the rights incident to that relation, he would then be vested with the right of tenant in possession. (Mooers v. Wait, 3 Wend. 104; VanWyck v. Alliger, 6 Barb. 507; Rood v. N.Y. Erie R.R. Co. 18 id. 80.)
I cannot concur with the learned judge who delivered the opinion in the court below that the doctrine of the last two cases ought not to be sanctioned. It may not be stated as guardedly, perhaps, as it ought, but, properly qualified, it is not only to be approved but the country cannot get on without it. As I understand the doctrine it is this: The vendee under a contract of purchase which does not give the right of possession, has no right of possession and is a trespasser if he enters. (Erwin v. Olmstead 7 Cow. 229; Ives v. Ives, 13 J.R. 235;Suffern v. Townsend, 9 J.R. 35; Cooper v. Stower, Id. 331.)
Nor does a contract to purchase which gives a right to enter authorize the purchaser to commit waste, unless the land is wild and uncultivated; then the purchaser may clean up so much of it as good husbandry may require. (Suffern v. Townsend, 9 J.R. 35;Cooper v. Stower, Id. 331; Mooers v. Wait, 3 Wend. 104; 1 Cow. cited, supra.)
A vendee of farming lands who is permitted by the contract to enter and cultivate the farm is a tenant, and as such permitted to cut sufficient wood for fire — for making and repairing of fences and buildings, (3 Wend. 104;) but he may not commit waste. So a vendee of wild land, may not cut valuable timber the cutting of which lessens the security of the vendor.
Now these rules applied, I can discover no way in which they can prejudice the vendor. To hold that a vendee of wild land may not cut timber unless express license is given, is to expose the vendor to the risk of endangering *Page 33 
his security by the necessity he will be under in each case of defining the right intended to be granted, or on the other hand the vendee may lose the benefit of his purchase by the restrictions which the vendor finds it necessary to impose upon him. The law now regulates and defines the rights of both as fully and as perfectly as the nature of the case admits of, and I think it would be alike unwise and unjust to disturb the adjudications by which the rights of vendors and purchasers are now regulated.
If the foregoing propositions are correct the following conclusions would seem to be legitimately drawn from them:
1. That the plaintiffs, as reversioners, are entitled to maintain an action against the defendant for an injury to their reversionary interest, though their mother, the tenant for life be living.
2. That the defendant while in possession was clothed with the rights of a tenant, and as such had the right to cut timber for the use of the farm, but could not carry it off to be used elsewhere, or sold.
3. That it was waste in him to cut off the timber which it was necessary to retain for the use of the farm; and for this damage, as well as the value of the timber, the plaintiff is entitled to recover. This proposition as to the right to recover for clearing the land rests on the presumed findings of fact that such clearing was not assented to by the plaintiffs. The assent of Lawrence Van Deusen alone would not affect the rights of the other plaintiffs.
The next question in the case is whether the plaintiffs were entitled to recover treble damages?
1. I cannot agree with the court below that the statute under which treble damages are claimed in this case was ever intended to embrace a case like the one now before the court. In none of the reported cases that I have found has it ever been claimed that in actions against a tenant or other person in possession of land, who had by reason of *Page 34 
his possession an interest in the growing timber, the owner was entitled to treble damage. Among the multitude of actions of trespass between landlords and tenants for destroying timber, one case at least should be found in which treble damages were allowed or claimed. If there is one such I have not found it. Again; the object of the legislature was to protect timbered land against willful trespassers and not to embrace a case of a tenant, against whom it would be necessary to bring an action to determine whether or not he had not the right to cut the timber. When the trespass was casual or involuntary, or the defendant had probable cause to believe the land on which the trespass was committed was his own, only slight damages could be recovered. This exception demonstrates to me that it was not intended that the provision in question should apply to persons occupying as the defendant in this case did.
2. The plaintiff is not entitled to recover treble damages, because his complaint is not limited to a claim for damages under the statute giving treble damages, but embraces another and distinct cause of action.
In Mooers v. Allen (2 Wend. 247), the plaintiff claimed for treble damages and costs under a statute substantially the same as the one under which the plaintiff in this case claims to recover; and it appearing that there were four counts in the declaration, only one of which was on the statute, the plaintiff was held entitled to single damages and costs only — the verdict being general on all the counts.
In Benton v. Dale (1 Cowen, 160), the declaration contained two counts; one under the statute giving treble damages, and a general count. The plaintiff had a verdict and recovered for treble damages. The court says: "It is a sufficient answer to the application for treble damages that the verdict is general on both counts. To entitle the plaintiff to have the damages and costs trebled, it should have been on the first count only, which was upon the statute." *Page 35 
The same reasons which induced the court to restrict the right to treble damages to cases in which the action was solely on the statute, apply with equal force to actions under the Revised Statutes.
3. But if the plaintiffs should be deemed entitled to treble damages, they must be treble the damages for the taking and carrying away the timber, and not treble the damages which may be given for injury to the land, or to the reversionary interest beyond the mere value of the timber.
I have already attempted to show that a reversioner could not maintain trespass against a tenant, for waste, because trespass could only be maintained by one in possession. But it has been held that a landlord may maintain trespass against the tenant for carrying away timber after it has been cut, when the removal may be treated as a distinct trespass from the cutting. (Schermerhorn v. Buell, 4 Den. 422.) If the reversioner can be considered as entitled to the same rights in this respect as the lessor, then he might recover treble the value of the timber carried off; the word damages, in the Revised Statutes, being equivalent to the words "value of the wood," c., in the provision in the Revised Laws, 524, § 22. (King v. Havens, 25 Wend. 420, 422.) It would follow that the plaintiff could not treble the damages, if any were allowed, for lessening the value of the land by reason of removing wood necessary for its use. The statute does not apply to such damages. In this case the largest portion of the evidence was given to show just this species of damages, and it cannot be said that such damages did not enter into the judgment. If these damages did form a part of the judgment, as I have no doubt they did, then they have been trebled erroneously, and for this reason the judgment should be reversed. As we do not know how much was allowed for the wood, it is impossible to ascertain how much should be deducted, and a new trial is therefore necessary to a proper adjustment of the damages. I have not stopped to enquire *Page 36 
whether the plaintiffs could unite in this action, or whether they are embarassed by the change in the practice which abolishes the action of trespass as well as other forms of action; — because I think there is no good reason for doubt as to either proposition. I have preferred to examine the case on its merits, and to ascertain the principles which should govern the case and which will enable the referee or the court to make a satisfactory and final disposition of the case on another trial.
The referee erred in permitting the question to be put to the witness: What was, in his opinion, the difference in value of the farm by the removal of the timber? This question was objected to by the defendant's counsel: 1st. As irrelevant; 2d. Because the witness was not shown competent to give an opinion on the question of damages; 3d. Opinion merely speculative; 4th. As assuming an improper test of damages.
The amount of damages which the plaintiffs were entitled to recover, if entitled to recover any, was the amount the farm was depreciated in value by reason of the injury complained of. It was the province of the jury to ascertain the amount; it was the province of the witnesses to furnish the data from which the amount was to be ascertained. When, therefore, the witness was called on to give his opinion as to how much the farm was depreciated in value, he was required to give his opinion as to the amount of damages the plaintiffs had sustained. This is not admissible. (Morehead v. Matthews, 2 Comst. 514; Harger v.Edmonds, 4 Barb. 256; Fish v. Dodge, 4 Den. 312; Norman
v. Wells, 17 Wend. 137.)
It was unquestionably competent for the witness to give his opinion as to the value of the farm with the timber on, and its value after it was taken off. The difference between the two may be the damages. In cases where the damages are arrived at by merely subtracting one sum from another, *Page 37 
it may seem to be refining over much to refuse the witness the right to make the subtraction himself and declare the result; for this is what he is called on to do when asked to give his opinion as to the amount of damages. In an action for breach of warranty of the quality of property sold, the measure of damages is the difference in value between the property as warranted and as it was in fact. In this case, the witnesses are required to give their estimate of the value of the property as it is, and what it would be if it was as warranted. And they may be asked the amount of damages sustained by reason of the breach. (Joy v.Hopkins, 5 Den. 84.) Although the witnesses in these cases give their opinions as to value, yet it is these opinions which the law permits the jury to receive as the data from which to arrive at the damages. It would be violating a wholesome and necessary rule of law to permit witnesses to assume the province of the jury in arriving at the measure of damages; and that principle is nevertheless violated because in a given case it may be less mischievous than in some others.
There are cases in which it is necessary to put to the witness the very question how much damages the plaintiff has sustained by reason of the act or neglect of the defendant. These are cases in which no data can be given which could enable a jury to arrive at a measure of damages, because the amount of the damages is known and can be properly appreciated and measured only by persons of skill in the business or matter to which the damage in the case relates. For a full and accurate examination of the cases on the question, see Clark v. Baird (5 Seld. 183).
I am of opinion, therefore, that the question put to the witness was incompetent, and that the evidence ought not to have been received. On this ground also, I think the judgment should be reversed.
All the judges concurred in reversing the judgment, on *Page 38 
the ground that incompetent evidence had been received; and that the plaintiffs were not entitled to treble damages.
SELDEN and HOGEBOOM, JJ., took no part in the decision.
Judgment reversed. *Page 39