# Henderson *versus* Lauck.

1. If a vendor of personal property rely on the promise of the vendee to pay, and delivers the property absolutely, the right of property is changed though the same be not paid for.

2. Where corn was delivered to be paid for on the delivery of the last load, and when delivered, was, in the presence of one of the vendors, placed on a heap with other corn of the vendee; *Held*, that the corn not being paid for, the mixture did not prevent the reclamation of as much of the corn as the vendors delivered, and that replevin lay therefor.

ERROR to the Common Pleas of *Cumberland county*.

This was an action of replevin brought by John and Peter Lauck, as partners, *v.* William M. Henderson, administrator of the estate of James Preston, deceased, for 742 bushels of corn, of the value of $371, delivered to Preston on 12th April, 1852, at a mill which Preston had on lease. The defendant gave bond, and plead *non cepit* and property.·

John and Peter Lauck sold to James Preston a quantity of corn, *to be paid for on delivery* at a mill which Preston had rented, and situate about two miles from Carlisle. On the 19th, 25th, and 28th of March, 1852, one of the plaintiffs delivered the corn at the mill, and as each load was delivered he took a receipt, stating it to be for the use of Preston. It was thrown on a pile with other

corn then in the mill, in his presence, and without objection. When he delivered the last load, on the 28th of March, Preston was ill. After Lauck delivered the corn, and saw it placed on the pile with other corn, he took the receipts, and went to Carlisle, and found that Preston was so ill that he could not see him. In the afternoon he returned to the mill, and notified the miller that he had not been paid, and would reclaim the corn. Thus matters stood until after Preston's death, which took place on the 30th March, 1852, after which Henderson took out letters of administration on his estate. Lauck afterwards came to the mill, and was proceeding to measure off corn from the pile to the extent of the quantity which he had delivered. Henderson objected, on the ground that his corn could not be identified, and the action of replevin was instituted. It appeared that several lots of corn had been thrown on the same pile. That delivered by Lauck was the last which was thrown on the heap. There were six or seven hundred bushels on the pile before Lauck delivered that which he brought. The rest of the corn on the pile belonged to Preston. The corn of the Laucks was to be paid for as soon as the last of it was delivered; it was not paid for.

The defendant's counsel submitted points. The first was to the effect that, if the plaintiffs could not identify the corn they had delivered, they could not recover.

2d point. "That if the vendors relied on the promise of the vendee to perform the conditions of the sale, and delivered the goods *absolutely*, the right to the property was changed, although the conditions were never performed."

3d point. "That if the vendors delivered the corn from time to time, and saw it mixed with other corn then in the mill, it was such an absolute parting with the dominion of it as changed the property."

GRAHAM, J., refused to charge that to enable the plaintiffs to recover, the corn delivered should be identified with certainty; but instructed the jury that if they believed that the corn could be identified *with reasonable certainty*, they could recover.

The *second* point the Court answered generally in the affirmative, but added: But if plaintiffs did not rely on the promise of Preston to pay, but relied on receiving payment as soon as *the last load* was delivered, agreeably to the contract, and one of them immediately came to Carlisle, and ascertained that Preston could not pay him, and returned the same day, and gave notice to the miller to whom he had delivered the corn, that Preston had failed to comply with his contract, and that the corn was his (Lauck's), and not Preston's, and that the miller should not use it, and the corn remained as it then was till the writ of replevin was served, the plaintiffs might recover.

[Henderson *v.* Lauck.]

Answer to the third point: If there was such a commingling of plaintiffs' corn with other grain, as to prevent it being identified *with reasonable certainty*, then he could not recover in this action. But we do not see the evidence of such commingling in the present case.

Error was assigned to the answers to the three points; to the comments on the facts, and "placing the identification of the corn on the ground of reasonable certainty."

*Henderson, Miller,* and *Gallagher,* were for plaintiffs in error. —To maintain replevin, the property claimed should be clearly or precisely indentified: 2 *Rawle* 427; 20 *Vin.* 419; 5 *Johns. Rep.* 348; 6 *Id.* 168; 10 *Id.* 287; *Comyn on Land. and Ten.* 385; 6 *Law Lib.* 216. It was said that the Court erred in charging that the plaintiffs could recover if the grain could be indentified *with reasonable certainty.*

By the doctrine as to confusion of goods, each owner of goods mixed has an interest in the whole to the extent of his portion: but if this doctrine were applicable to the grain in question, *replevin* would not be maintainable: 1 *Black. Com.* 405; 5 *Barr* 211.

As to the second point was cited 1 *Yeates* 528–9, Leedom *v.* Philips; 1 *Harris* 146, Bowen *v.* Burk; 3 *Ser. & R.* 20, Harris *v.* Smith.

*Watts,* contrâ.—Lauck never relinquished any part of the terms agreed upon, and was not guilty of remissness in the matter.

The opinion of the Court, filed July 25, 1853, was delivered by Lowrie, J.—The instructions of the Court were clearly right as to the questions of the sale and conditional delivery of this grain; and thus the real question is fairly raised—Does the fact, that, on receiving it, the buyer mixed it with other grain of his own, of the same kind in one heap, prevent its specific reclamation?

The answer of the Court was in the negative, and so is the Roman law, *Inst.* 2, 1. 28; *Dig.* 6, 1, 3, 2, and *Eod.* tit. L. 5; and such is the very point in Inglebright *v.* Hammond, 19 *Ohio Rep.* 337; 11 *U. S. Dig.* 95, as to grain; and of Ryder *v.* Hathaway, 21 *Pick.* 305, as to cord-wood. In all these cases the owner is allowed to take back his own share of the bulk, kind for kind, measure for measure. It does not change the result that the seller saw the mixture take place, without objection: for, by consenting to such a mixture, the owners acknowledge that each parcel is of like quality, and that each one may take out the proportion that he cast in: *Dig.* 41, 1, 7, 8. It was not the seller that was wrong in allowing the mixture, relying on the promise of the buyer; and

[Henderson *v.* Lauck.]

to permit the buyer to allege the mixture in bar of the right of reclamation, is to permit him to gain by his own fault.

Indeed every principle of law is against the buyer, for it was he that did the wrong in mixing the grain, if he was not ready to pay for it; and the usual rule would give the bulk to the seller until the buyer should separate his own. But this does not apply to goods so undistinguishable as grain, if the measure of each one's share be known. On the general subject of confusion of goods and effects, the rule is, that he, who wrongfully causes it, must submit to all the risk and inconvenience of making a clear and well defined identification and separation: 30 *Maine R.* 237, 295, 370; 7 *Conn.* 275; 20 *Verm.* 333; 15 *Ves.* 436; 8 *Id.* 50; 2 *Johns. Ch. R.* 108; 2 *Blackf.* 383; 7 *Mass.* 127; 8 *Pick.* 443. Even debts due to a principal, and mixed up by an agent with his own, may be specifically followed: 2 *Pick.* 86; 5 *Id.* 7; 3 *Mass.* 232.

Judgment affirmed.

Lewis, J., dissented.