# George Snyder, Appellant, v. John B. Stehman, Caleb E. Urey and Robert M. Urey.

*Fraudulent sale—Evidence—Question for jury.*

The ownership of certain corn, levied upon as the property of a tenant of a farm by a creditor and claimed by his sons as the assignees of his lease and personal property, being in issue, every circumstance in the condition and relationship of the parties and every act and declaration of the party charged with fraud may be given in evidence, if, in the judicial mind, it bears such a relation as is calculated to persuade the jury that the allegation of fraud is or is not well founded.

*Sheriff's sale—Delivery of undivided share of tenant's corn—Landlord and tenant.*

A tenant's share of corn in the crib having been sold under execution, and delivery made by the sheriff while still undivided, such delivery is as complete as possible, and the sheriff's vendee succeeded to all the tenant's right to the property and a division thereof.

Argued March 21, 1899. Appeal, No. 14, March T., 1899, by plaintiff, from judgment of C. P. York Co., on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Reversed. Opinion by ORLADY, J.

Replevin. Before STEWART, J.

It appears from the record and evidence that upon an execution against Samuel Urey, the sheriff sold to the plaintiff a half interest in a lot of corn in the cribs on the farm owned by Stehman & Garber. At the time of sale both Samuel Urey, the defendant in the fi. fa., and his sons Caleb E. Urey and Robert M. Urey, lived upon the premises, in the same house. After the sale was over and the sheriff had gone, the plaintiff, Snyder, went for his corn. He found the cribs locked and the defendants in this suit, viz: Caleb E. Urey and Robert M. Urey, refused to allow him to take it. The plaintiff thereupon issued the writ of replevin for the corn, and the sheriff who made the sale went with him to the premises and delivered to him the corn purchased by him at said sheriff's sale. At the trial of the cause there was a conflict of testimony as to whether Samuel Urey, the defendant in the execution, was the tenant of the farm

and the owner of the corn sold by the sheriff, or whether it belonged to his sons, the defendants above named, who lived in his family with him. This question the court below declined to submit to the jury and directed a verdict for the defendants for the reasons stated in his charge, chiefly because there had been no actual division of the corn between the landlord and tenant. George B. Stehman, one of the defendants named in the writ of replevin, and one of the owners of the premises, was not served, and was not therefore really a party to the issue when the case was tried.

The plaintiff submitted the following points:

[1. That if the jury find from the evidence that the story of the defendants, Robert Urey and Caleb Urey, that they became tenants of the Stehman & Garber farm in the spring of 1894, and that their father then ceased to be tenant, is false and untrue, and that they did not farm the place as tenants, then the defendants have not shown ownership of the corn raised on the Stehman & Garber farm; and so far as that portion of the corn in controversy is concerned, the verdict of the jury should be for the plaintiff. *Answer:* This point is not affirmed.] [1]

[3. If the jury believe from the evidence that the corn raised on the Stehman & Garber farm was really raised by the father in 1894, as in former years, when he was tenant, and not by Caleb Urey and Robert Urey, then their verdict should be for plaintiff as to all corn raised on the Stehman & Garber farm. *Answer:* This point is not affirmed. In the absence of evidence showing a division of the crop, the plaintiff would not be entitled to recover, even though this be true.] [3]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1, 3) in refusing plaintiff's first and third points, reciting same.

*Nevin M. Wanner*, with him *John W. Heller*, for appellant.— The corn was found in the defendant's apparent possession. It was seized and sold as his property, and the sheriff swears he delivered it to the purchaser. The cribs were open, and so far as delivery was possible the corn was delivered to the purchaser without objection from defendants or any one else. This is all the law requires to give title to personal property. Actual pos-

session is not necessary in all cases: 20 Am. & Eng. Ency. of Law (1st ed.), 1057–1064; Woods v. Nixon, Addison, 130, 134; Harlan v. Harlan, 15 Pa. 507.

It is well settled that where the landlord's rent is a share of the grain by the bushel, he has no title whatever to it until it is actually measured up, divided and set apart to him. Until then it belongs to the tenant, and if he sells it before a division the landlord cannot follow it into the hands of the tenant's vendee: Rhinehart v. Olewine, 5 W. & S. 157, 163; Long v. Seavers, 103 Pa. 517; Ream v. Harnish, 45 Pa. 376; Jackson & Gross, Landlord and Tenant, 390, sec. 24.

If it be true, then, that the grain in its undivided bulk is the property of the tenant alone, why may not the sheriff sell either the whole or the half of it? If the latter, why may he not measure it up, and deliver it to the purchaser? Even if joint ownership existed between landlord and tenant, to divide the grain is simply to measure it. The purchaser of the tenant's interest succeeds to his right to divide it.

The fact that the grain sold was mixed up with other grain of the same kind presents no difficulty. A vendee cannot refuse to accept goods, or avoid payment, by refusing to separate his goods from the others: Broomfield v. Johnson, 128 Pa. 254.

Commingling the goods of the plaintiff with those of another is no bar to an action of replevin to recover the same, even though the identical goods may not always be distinguishable: Wilkinson v. Stewart, 85 Pa. 255; Young v. Herdic, 55 Pa. 172; Brewer v. Fleming, 51 Pa. 102.

Grain may be replevied when mixed with other grain: Henderson v. Lauck, 21 Pa. 359.

*John F. Kell,* with him *H. W. & J. St. C. McCall,* for appellees.—The argument on the part of the appellees is expressed tersely and clearly in the two points of defendants, which were affirmed by the court below, as follows:

1. In order to maintain the action of replevin, the plaintiff must show a right of exclusive possession in himself as against the defendants in the action. The burden of proof lies on the plaintiff to do this. The uncontradicted evidence being that George Snyder, plaintiff, purchased an undivided half interest

in the corn, the right of exclusive possession was not in him, and the verdict must therefore be for the defendants.

2. The plaintiff in replevin, where the plea is property, must recover on the strength of his own title, and not on the weakness of his adversary.

Numerous authorities in Pennsylvania and other states squarely sustain this position. Among them the following are cited: Reinheimer v. Hemingway, 35 Pa. 432; 20 Am. & Eng. Ency. of Law (1st ed.), 1050, sec. 5.

The interpleader act is solely for the protection of sheriffs. A discharge of a rule to interplead does not in any way affect the rights of claimants to personal property: Bain v. Funk, 61 Pa. 185; Larzelere v. Haubert, 109 Pa. 515.

OPINION BY ORLADY, J., July 28, 1899:

By virtue of a writ of fieri facias, which was issued against Samuel Urey, a lot of corn was levied upon as it stood in shock in the field where it was grown on the farm of Stehman and Garber, which had been occupied by Samuel Urey as tenant for more than thirty years. Two sons of Samuel Urey, the defendants in this action, lived in the same house with their father and claimed to own the corn as tenants of Stehman and Garber. A rule in interpleading proceedings, which were instituted by the sheriff, was served on them and they failed to appear and maintain their claim to the property, whereupon a venditioni exponas was issued and the sheriff sold an undivided one half interest in the corn,—which in the mean time had been husked and put in cribs—as the property of Samuel Urey to George Snyder. Caleb and Robert Urey, the sons, refused to permit Snyder to remove the one half of the corn, and this action of replevin was instituted to recover it.

The sheriff, under the writ of replevin, delivered the one half of the corn to Snyder, which, until that time, had not been divided between the landlord and tenant. Whatever interest Samuel Urey had in the corn passed to Snyder, who bought and paid for it and succeeded to all of the rights of Samuel Urey. The delivery was as complete as it is possible to make of an undivided interest of personal property in order to enable the purchaser to obtain dominion over it. There is no controversy between the landlord and the tenant, as the former received the

full share to which he was entitled. The amount of corn in the crib was well known and the share of the landlord was easily ascertained. It was at the proper place for division and the tenant was the proper person to separate the landlord's share from his own, but he could not defeat the purchaser's right to possession of it by refusing to make the division: Bruns v. Cooper, 31 Pa. 426. If Samuel Urey were the owner of the interest purchased by Snyder, his right to divide the corn passed by the sale to Snyder, so that his share could be clearly and precisely identified: Henderson v. Lauck, 21 Pa. 359. The sons claimed that under a family agreement between them and their father, which was made about three years before the sheriff's sale, they purchased the personal property on the farm and became the tenants in his stead and upon the same terms as he had held the premises. One of the brothers informed the landlord of this arrangement and it was assented to, though the terms are not given. The plaintiff contended that the whole transaction was fraudulent, there being no consideration for it or any change of possession following it. The sons claimed title through the father and if it was founded upon a fraud in fact or a fraud in law the purchaser at the sheriff's sale had a superior title to them and was entitled to the possession of the property: Harlin v. Harlin, 15 Pa. 507; Wilkinson v. Stewart, 85 Pa. 255; Long v. Seavers, 103 Pa. 517.

This case is quite different from Reinheimer v. Hemingway, 35 Pa. 432, where the execution was levied upon a partner's interest in a firm, and not upon any specific chattel. By his purchase he became a tenant only in common with the other partners so far as to entitle him to an account. The extent of his interest was to be measured by the result of that account. If in furtherance of the alleged fraudulent sale the sons commingled corn of their own with that which in fact was owned by the father they cannot profit by their own fraud; besides it was shown that all of the corn was not sold. The validity of the sale of the personal property and the transfer of the lease were the important questions, and these should be decided by a jury. In the investigation of that question every circumstance in the condition and relation of the parties, and every act and declaration of the person charged with fraud may be given in evidence, if in the judicial mind it bears such a relation as is,

calculated to persuade the jury that the allegation of fraud is or is not well founded: Glessner v. Patterson, 164 Pa. 224.

The plaintiff accepted the burden placed on him by the law, to show that the title of the sons was not good, and that as the purchaser of the interest of Samuel Urey he was entitled to the exclusive possession of the one half of the corn grown on that farm. The plaintiff's first and third points should have been affirmed.

The judgment is reversed and a venire facias de novo awarded.